The National Bank of the Republic of Chicago, Defendant in Error, v. Otto E. Schmidt et al., Plaintiffs in Error.

Gen. No. 35,327.

Heard in the third division of this court for the first district at the October term, 1931. Opinion filed November 16, 1932. Rehearing denied December 1, 1932.

CASSELS, POTTER & BENTLEY and JOHN J. SHERLOCK, for plaintiffs in error A. Fred Kabana and B. F. Meservey; RALPH F. POTTER, JOHN J. SHERLOCK, GEORGE C. BUNGE and RALPH HORWEEN, of counsel.

ARTHUR J. HUGHES, for defendant in error; REGINALD A. BULLINGER, RICHARD A. GRIFFIN and FRANK MICHELS, of counsel.

MR. JUSTICE HALL delivered the opinion of the court.

By this writ of error it is sought to reverse a judgment of the superior court of Cook county in favor of the National Bank of the Republic, plaintiff, and against the defendants for the sum of $48,028.30. The judgment was entered by confession upon a judgment note for principal, interest and attorneys' fees. Upon motion entered to vacate this judgment, the court allowed it to stand, but permitted defendants to plead. Pleas of the general issue, fraud and false representation in procuring the execution of the note, and a total lack and failure of consideration were filed. Issues were joined on the declaration, pleas and special *similiter* and replication filed by plaintiff. The cause was submitted to a jury, which returned a verdict in

favor of plaintiff, upon which verdict the aforementioned judgment was entered. It is contended by the defendants that the note signed by them was obtained by false representations made by one Max Steiner, who was a vice president of the plaintiff bank and a fellow director with these defendants in the Laramie State Bank. It is charged that Steiner represented to the defendants, prior to the signing of the note, that the Laramie State Bank had an overdraft with the plaintiff bank approximating the amount of the note sued on, and that this overdraft, together with certain withdrawals made by the president of the Laramie State Bank brought about the insolvency of the Laramie State Bank; that the debt to the plaintiff bank was the individual indebtedness of the president of the Laramie State Bank, and that the note was procured by fraudulent representation and that there was no consideration therefor. This writ of error is being prosecuted by two of the defendants, B. F. Meservey and A. Fred Kabana.

The note sued on is dated Chicago, December 9, 1929, and is for $43,000, payable to plaintiff bank, and is signed by all of the defendants, then directors of the Laramie State Bank, including Carl Mueller who was president and managing officer. Prior to this time, the Laramie State Bank, after an examination by the auditor of public accounts, had been declared to be insolvent, and the directors had been notified that unless a certain amount of money was put into this bank and certain paper taken out, the bank would be closed. At this time, Mueller, the president of the Laramie State Bank, had on deposit with the plaintiff bank a large amount of collateral, most of it being the property of the Laramie State Bank, which he had unlawfully withdrawn therefrom, which collateral was held by the plaintiff bank to secure the payment of Mueller's note, which with interest, then amounted to approximately $43,000,

On December 9, 1929, the date of the note sued on, the defendants, in order to meet the demands of the auditor of public accounts, executed a document by which they severally agreed to advance in cash and securities to the Laramie State Bank "in such manner as might be necessary to result in the Laramie State Bank receiving the sum of $157,085.52," in order to remove from the Laramie State Bank notes aggregating that amount, "and further the sum of $42,914.48 to obtain certain collateral" from plaintiff bank. The "collateral" here referred to was made up of the securities deposited with plaintiff bank by Mueller to secure the payment of his. note to the plaintiff bank. By this agreement B. G. Anderson, Sam Spitzer and Edward W. Kaiser were appointed to act as trustees in obtaining the notes and other collateral and securities, and to have this collateral transferred to them as trustees, and the agreement provided that the beneficial interest therein in the various signers of this agreement should be in proportion to the amount set after their respective signatures. This draft of agreement contained the following:

"This agreement is a mere temporary memorandum and will be executed in regular form as soon as possible."

After each signature to the document there appeared the amount each signatory pledged in order to raise the amount necessary to meet the demands of the auditor of public accounts. Thereafter a further and more formal agreement was entered into by these people concerning the same matter and was signed by the same persons. In furtherance of these agreements, Mueller and the various signers of the agreements and of the note in question, together with the trustees mentioned, caused the various documents held by the plaintiff bank as collateral security to be delivered to the Noel State Bank to be held by it for

the trustees for the benefit of the signatories to the agreement referred to. The giving of the note sued on to the plaintiff bank was without doubt made, executed and delivered for the purpose of procuring from the plaintiff bank the release of these securities for the benefit of the parties to this agreement, the makers of the note sued on. A certified check was issued by the plaintiff bank to the makers of this note, indorsed by them and returned to the National Bank of the Republic, in furtherance of this purpose.

There is considerable evidence to the effect that at various meetings of the directors of the Laramie State Bank, at which officers of the plaintiff bank were present, it was stated that there was an overdraft by the Laramie State Bank on the National Bank of the Republic, and that the giving of the note in question was for the purpose of taking up the overdraft. It makes little difference whether these statements were true or not. These men were all directors of the Laramie State Bank, and could very easily have ascertained whether this statement was correct or not. On the trial defendants offered proof tending to show that the makers of this note were unfamiliar with banking affairs because of their various vocations, lacked familiarity with banking procedure, and for this reason were not required to use the degree of care which might be required of more sophisticated persons to ascertain whether their note was to take care of an overdraft of the Laramie State Bank, or the note of Mueller. If these men were so unsophisticated as suggested, they certainly had no right to act as directors of the Laramie State Bank, thus becoming trustees of other peoples' money, which was lost by the failure of the bank. The fact is undisputed that the plaintiff bank upon receipt of the note in question and the return of the check indorsed by the makers of the note to the plaintiff bank, released all the secu-

rities herein referred to for the benefit of the parties to the contract, the makers of the note sued on. There was ample consideration for the making of the note, and the evidence fails to disclose that there was any fraud in the transaction.

The judgment of the superior court is affirmed.

*Affirmed.*

WILSON, P. J., and HEBEL, J., concur.